White, J.
I dissent from the judgment of the court in this case.
In regard to the statement accompanying the opinion, I will merely say that I do not assent to it as containing a full presentation of the circumstances of the case.
I do not propose, however, to enter into a general review of the case, but to state briefly the grounds of my dissent. *614 The case has already been before the court on error, and is found reported in 20 Ohio St. 517. The will was also brought before the court for consideration in the case of Davis et al. v. Boggs et al., Id. 550. In these cases the will is, in substance, set out.,
Three tracts of land were disposed of by the will, besides the lands in controversy in this case. One of them being described as the farm on which the testator formerly resided.
In regard to the present ease, I will say, in the first place, it is very questionable whether a verdict in favor of the plaintiffs below ought, upon any aspect of the testimony, to be sustained, even if the charge of the court to the jury were unobjectionable.
But it seems' quite plain to me that the charge was calculated to mislead the jury, and that the verdict Óf the jury is attributable to the misleading nature of the charge.
And this is especially true in view of the character of the evidence before the jury.
At the time of making his will, in 1842, the testator owned a body of land consisting of about 490 acres, on which he resided. From about the year 1833, this body of land was farmed as one farm. It was divided into various fields; but for some years prior to the making of the will there was nothing on the land or in the mode of its cultivation indicating that the body of land consisted of two farms.
Testimony was admitted by the court against the objections of the defendants of various declarations of the testator, made before and after the making of the will, in regard to the lands in question, and which were admitted and allowed to be used by the jury to show what the testator meant to devise by the following clause of his will, viz : “ I give and bequeath unto my beloved wife the whole of my home farm, where I now reside, as an estate in fee simple.” That is, whether he meant to devise the whole tract, or only about 150 acres off the south end of the tract.
The general character of this evidence is illustrated by the following extract from the testimony of Mrs. Grondo Taylor, taken from the bill of exceptions, viz :
*615 “ Ques. Mrs. Taylor, do yon know of any division of that property while you lived there ?
“ Ans. I heard uncle (Capt. Taylor) tell just where the line was. -
“ Ques. The line of what ?
“ Ans. Between the Joe Boyd and the home place.
“ Ques. What did you hear Capt. Taylor say, and to whom?
“Ans. I heard him tell aunt (Mrs. Jane Taylor) just where the line was between the two places—the Joe Boyd place and the home place.
“ Ques. What did he say to her ?
“ Ans. He told her that the line went along the south line of the Pelham lot down across the corner of the meadow, and between where the machine-house stood, where they thrashed their grain, and the brick-kiln ; from that to the river.
“ Ques. When was it you heard him tell that ?
“ Ans. I think it was the summer before he died ; the fore part of the summer. He told her where the line was at the other side of the place too.”
The line referred to by this witness, as described by Capt. Taylor, constituted, as the plaintiffs below claimed, the north boundary of his “ home farm.” The lands north of that line they sought to recover in this action, as not being part of the “ home farm ” devised to the widow, and which they claimed as residuary devisees under the will.
Under this state of the evidence, the court instructed the jury, among other things, as follows :
“ You will look to all the evidence admitted by the court, and determine what the testator meant by his home farm at the time he made his will—what it is that corresponds with that description.
“ What lands did he mean when he used the words ‘ the whole of my home farm where I now reside ?’ When he used these words he evidently supposed they were sufficiently definite in meaning to enable all parties concerned to determine what land he intended to give his wife.
*616 “ In this action the plaintiffs must recover, if they recover at all, by satisfying you by a preponderance of proof that they have title to the lands claimed by them, or some definite and ascertained part thereof. Keeping, then, this rule in your mind, and applying it to the evidence, ascertain what parcel of land did Captain James Taylor intend to pass to his wife when he devised to her his home farm; that farm she would take under the will, and the plaintiffs will take his other lands, if any remain, described in the petition.
“ If the plaintiffs, by their proof, have convinced you that at any time after Captain Taylor topic back the lands from Boyds he regarded such lands as two distinct farms; if they were two distinct farms in his mind, with a definite boundary between them, and so treated and used by him, one of tohich he regarded and in his mind was his home farm, and was so denominated by him, the presumption is that he continued so to regard it, and you must so find, unless the proof shows you that he afterward changed his mind and manner of treating it, and afterward considered, designated and treated it as one farm.”
It is manifest from these instructions, that the declarations of the testator were not merely to be used by the jury as bearing upon the question whether the whole body of land constituted in fact two farms, or but one; but as direct evidence to show the testator’s intention. So that, if the jury found that there was in fact but a single farm, yet if they found, from the declarations of the testator, that he regarded the lands in his mind as two farms, the j ury were to so regard it, without reference to what the fact might be.
What the testator meant is to be ascertained by the language contained in the will. “ The question, in expounding a will, is, not what the testator actually intended as contradistinguished from what his words express, but what is the meaning of the words he has used.”
The words of a will are to be understood in their strict and primary meaning, unless it appears from the context they are used in a different sense. Where there is nothing in the context showing the words to be used in any other *617 than their strict and primary sense, and the words as so understood are sensible with reference to extrinsic circumstances, it is laid down by Wigram as an inflexible rule of construction that the words are to be interpreted in that sense and in no other, although they may be capable of some secondary interpretation, and although the most conclusive evidence of intention to use them in such secondary sense be tendered.
The language of the will is, of course, to be read in the light of the state of things existing at the time the will was made and to which it relates. This state of things is provable by parol evidence, and constitutes the extrinsic facts in the light of which the will is to be construed and applied. The parol evidence must be pertinent and material to the fact to be established, and should be limited to the purposes for which it is introduced. In the present case, the testator admittedly had but one home farm, and the question in controversy was as to the extent of that farm. The defendants claimed that the farm consisted of the entire 490 acres; while the claim of the plaintiffs was that the whole body of land constituted two farms.
Any evidence tending to show whether the entire body of land constituted in fact two farms or only one, was pertinent and material. Whether there were two farms or only one, was a question of fact to be determined upon the evidence. But if, in view of all the evidence, the whole body of land constituted in fact a single farm, it could not be made two, by showing by parol testimony that the testator so intended, or so regarded it in Ms mind.
A devise of a particular farm or parcel of land can not be defeated by showing by parol that it was the intention of the testator to devise but part of it.
Under the ambiguous nature of the charge, the jury were allowed to resort to parol evidence as a direct means of ascertaining the meauing and intention of the testator. The intent and meaning as thus ascertained, they were, in effect, told to regard as the meaning of the will. This was putting the oral testimony.on an equal footing with the lan *618 guage of the will, as a means of ascertaining the intention of the testator.
The dangerous character of such evidence is manifest in this case. The declarations of the testator occurred more than thirty years before the witnesses were called on to testify concerning them, and when, in the nature of things, many of the circumstances attending the making of the declarations and explanatory of them would be forgotten. And yet these declarations were submitted to the jury as evidence of the intention of the testator, to control what would' otherwise be the plain meaning and operation of the will as applied to the subject of the devise.
No where in the charge was it submitted to the jury to determine, as a question of fact, whether the whole body of land constituted one farm or two farms; but they were directed to ascertain how it was regarded in the mind of the testator, without reference to how it was in fact.
In my view, the way in which the case was tried was an indirect, though an effectual mode of subverting the policy of the law which requires wills to be made in writing, and tbat, for this reason, the judgment should be reversed.
Rex, J., concurred in the dissenting opinion.